Oral Argument Not Yet Scheduled

## UNITED STATES COURT OF APPEALS
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 15-3066
_____

UNITED STATES OF AMERICA

*Appellee,*

v.

KEITH MATTHEWS

*Appellant.*

APPEAL FROM THE UNITED STATES
DISTRIC COURT FOR THE DISTRICT OF COLUMBIA
Criminal Division

_____

APPELLANT'S OPENING BRIEF
_____

Jonathan Zucker, #384629
37 Florida Avenue, NE
Suite 200
Washington, DC  20002
(202)624-0784
jonathanzuckerlaw@gmail.com

Counsel for Appellant
(Appointed by the Court)

## Circuit Rule 28 Certificate
## As to Parties, Rulings and Related Cases

(A)   <u>Parties and Amici</u>.  This appeal arises from a criminal proceeding involving the defendant Keith Matthews and the United States of America.  Codefendants Breal Hicks, Ira Adona, Marquette Boston, Condovia Eddie and Dwayne Brown also appeared below.  This Court consolidated Keith Matthews ' appeal with the appeals of Ira Adona, Marquette Boston and Dwayne Brown.  Mr. Brown's appeal was subsequently deconsolidated.  There are no intervenors or amici.

(B)  <u>Ruling Under Review</u>:  This is an appeal from the judgment of the district court (Honorable Richard J. Leon), entered September 1, 2015, sentencing appellant to 108-months incarceration after he was found guilty by the jury on one count of felon in possession of a firearm in violation of 18 U.S.C. §922(g)(1).  In this appeal, appellant challenges his base offense level guidelines calculation and the imposition of an above guideline sentence.  JA  471; 483; 486-489.

(C)  <u>Related Cases</u>:  Appellant was previously a party to the government's interlocutory appeal in this case that was filed on July 31, 2014 and dismissed by this court on August 7, 2014.  *United States v. Hicks*, 14-3052, 2014 WL 4627805, at *1 (D.C. Cir. Aug. 7, 2014).  The consolidated appeals of Ira Adona and Marquette Boston are pending before this Court.  *United States v. Ira Adona,* No. 15-3067; *United States v. Marquette Boston,* No 15-3065.  The appeal of codefendant Dwayne Brown was deconsolidated.  *United States v. Brown,* No. 15-3056.

 

 

                                              */s/*_____

                                            Jonathan Zucker

# TABLE OF CONTENTS

Table of Authorities ................................................................................... iii

Jurisdictional Statement ...............................................................................1

Statement of the Issues..................................................................................2

Constitutional provisions, statutes and rules................................................2

Statement of the Case...................................................................................2

Statement of Relevant Facts.........................................................................3

   *The Trial* ...................................................................................................3

   *Matthews' Sentence* ..................................................................................4

Summary of Arguments................................................................................5

Argument.......................................................................................................6

I.    Sentencing Court Erred In Increasing
      Matthews' Base Offense Level For a
      Prior "Crime of Violence" ...................................................................6

   A.   *Standard of Review* .......................................................................6

   B.   *"Crime of Violence"* ....................................................................7

       1.    *The Force Clause Standards*....................................................8

          a.   *Elements of Attempted ADW* ...............................9

          b.   *Attempted ADW Does Not Have as an Element
              the Use Attempted Use or Threatened Use of Force* ..........10

       2.    *Attempted ADW is Not a Crime of Violence under
          the Residual Clause* ................................................................14

II.   Sentencing Court Plainly Erred In Failing
      To Sufficiently Explain Reasons for Sentencing
      Matthews Above the Guideline Range ..........................................................15

      A.    *Standard of Review* ..............................................................15

      B.    *Relevant Background* ...........................................................16

      C.    *Sentencing Court Did Not Explain Why Defendant's
            Conduct was More Harmful or Egregious Than
            The Typical Case*...................................................................16

      D.    *Lack of Adequate Explanation Requires
            Reversal for Plain Error*.......................................................20

CONCLUSION ...............................................................................................21

ii

# TABLE OF AUTHORITIES

*Beckles v. United States,*
   136 S.Ct. 2510 (June 27, 2016)(No. 15-8544) ...................................................15

*Begay v. United States,*
   553 U.S. 137 (2008) ...........................................................................................8

*Frye v. United States,*
   926 A.2d 1085 (D.C. 2005) ........................................................................10, 14

*Gall v. United States,*
   552 U.S. 38 (2007)........................................................................................15, 17

*In re Sealed Case,*
   527 F.3d 188 (D.C. Cir. 2008).........................................................................20

*In re Sealed Case,*
   548 F.3d 1085(D.C. Cir. 2008) ..........................................................................6

*Johnson v. United States,*
   ___U.S.___, 135 S.Ct. 2551(2015)..................................................................6, 8

*Johnson v. United States,*
   559 U.S. 133 (2010)............................................................................................9

*Mathis v. United States,*
   136 S. Ct. 2243 (2016)........................................................................................8

*Mungo v. United States,*
   772 A.2d 240 (D.C. 2001) ...............................................................................11

*Parks v. United States,*
   627 A.2d 1, 6 (D.C. 1993) ...............................................................................12

_____

*   Authorities upon which we chiefly rely are marked with asterisks.

*Perry v. United States*,
    36 A.3d 799 (D.C. 2011) .............................................................11, 13

*Sykes v. United States,*
    564 U.S. 1 (2011) ...............................................................................8

*Smith v. United States*,
    593 A.2d 205 (D.C. 1991) .................................................................12

*Smith v. United States*,
    813 A.2d 216 (D.C. 2002) .................................................................13

*United States v. Akhigbe*,
    642 F.3d 1070 (DC Cir. 2011) .......................................15, 17, 18, 20

*United States v. Andrews,*
    479 F.3d 894 (D.C. Cir. 2007) .......................................................8, 9

*United States v. Brown,*
    808 F.3d 865 (D.C. Cir. 2015) ...................................................17, 20

*United States v. Calabretta*,
    831 F.3d 128 (3d Cir. 2016).............................................................14

*United States v. Fleming,*
    215 A.2d 839 (D.C.1966) ................................................................10

*United States v. Madrid*,
    805 F.3d 1204 (10th Cir. 2015) .......................................................14

*United States v. Parnell*,
    818 F.3d 974 (9th Cir. 2016) .....................................................12, 13

*United States v. Pawlak,*
    822 F.3d 902, 911 (6th Cir. 2016) ...................................................14

*United States v. Redrick*,
    841 F.3d 478 (D.C. Cir. 2016).................................................7, 12, 13

*United States v. Rollins*,
    836 F.3d 737 (7th Cir. 2016) .............................................................10

*United States v. Sheffield*,
    832 F.3d 296 (D.C. Cir. 2016) ......................................................6, 8, 14

*Watson v. United States*,
    979 A.2d 1254 (D.C. 2009) ..............................................................11

*Williamson v. United States*,
    445 A.2d 975 (DC 1982) ...................................................................12

## Statutory Provisions and Rules

18 U.S.C. § 922(g) ...........................................................................9, 16

18 U.S.C. §3231 ....................................................................................1

18 U.S.C. §3553(c) .....................................................................17, 20, 21

28 U.S.C. §1291 ....................................................................................2

D.C. Code §11-502(3).............................................................................2

D.C. Code § 22–402 ..............................................................................9

D.C. Code § 22-1803 .............................................................................9

U.S.S.G § 2K2.1....................................................................4, 7, 18, 19

U.S.S.G. § 4B1.2...................................................5, 7, 8, 10, 14, 15

## Other Authorities

Criminal Jury Instructions for the District of Columbia ....................................10. 11

U.S. Sent'g Comm'n, Quick Facts–Felon in Possession of a Firearm.
http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Felon_in_Possession_FY14.pdf  .............................................16

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

No. 15-3066
_____

UNITED STATES OF AMERICA

*Appellee,*

v.

KEITH MATTHEWS

*Appellant.*

_____

APPELLANT'S OPENING BRIEF
_____

### Jurisdictional Statement

On September 10, 2013, Keith Matthews was named along with five others

in a Superseding Indictment charging federal and local offenses.  JA 72-98.[1]  The

district court had jurisdiction pursuant to 18 U.S.C. § 3231 and D.C. Code §11-

502(3).  Final judgment was imposed on September 1, 2015.  JA 274-280.  Timely

_____

[1]  The pleadings are arranged in chronological order within the Joint Appendix
Volume One.  Transcripts are arranged in chronological order within Volume Two
and sealed materials are in Volume Three.  Citations to materials in the Joint
Appendix shall be to "JA___."

notice of appeal was filed on September 9, 2015.   JA 266.  This court has

jurisdiction pursuant to 28 U.S.C. §1291.

## Statement of the Issues

1.  Did the sentencing court procedurally err in calculating Keith Matthews'

base offense level when it concluded that a prior Superior Court conviction for

attempted assault with a dangerous weapon was a "crime of violence" even though

that offense can be committed without the use, attempted use or threatened use of

violent force?

2.  Did the sentencing court plainly err by imposing an above guideline

sentence without providing, either orally or in writing, any specific reason why

Keith Matthews' conduct was more harmful or egregious than the typical case

represented by his applicable guideline range?

## Constitutional provisions, statutes and rules

In accordance with Federal Rule of appellate Procedure 28(f) and D.C.

Circuit Rule 28(a)(5), pertinent statutes and rules are set forth in the Addendum to

this brief.

## STATEMENT OF THE CASE

In July, 2013 a federal grand jury issued an indictment charging Breal Hicks,

Ira Adona, Conovia Eddie and Marquette Boston with participating in a broad

conspiracy to distribute and possess with intent to distribute Phencyclidine

2

("PCP").  The alleged conspiracy was centered in the Woodberry Village

apartment complex in Southeast Washington, DC.   A thirty-nine count

Superseding Indictment added Dwayne Brown and appellant Keith Matthews as

defendants.  It also alleged additional narcotic, firearm and local law offenses.

Matthews, Brown and Boston, were jointly tried before the Honorable

Richard J. Leon.  Matthews was found guilty of a single count of felon in

possession of a firearm and was sentenced to 108 months incarceration.

## STATEMENT OF RELEVANT FACTS

*The Trial*

The prosecution pursued an unsuccessful theory at trial that the defendants

conspired to distribute PCP by using various apartments in Woodberry Village to

store drugs and firearms.  All three defendants were acquitted of participating in

the charged conspiracy.[2]

The government's evidence that Matthews committed alleged substantive

crimes was equally lacking.[3]   Of the eight counts that were submitted to the jury,

---

[2]  The court granted Boston's motion for judgment of acquittal. JA 466.  The jury
returned not guilty verdicts for Matthew and Brown.  JA 132.

[3]  On February 2, 2015, the government voluntarily dismissed Assault with Intent to
Commit Robbery (Count 6s).  JA 41.  The court granted Matthews' motion for
judgment of acquittal as to Assault with a Dangerous Weapon, (Count 2r), Felon in
Possession (Count 3r), Armed Kidnapping (Count 6r), Armed Robbery (Count 7r),
Armed Extortion (Count 8r), first-degree Burglary while armed (Count 9r)
obstruction of justice (Count 14r) and Extortion (Count 4r).  JA 458-464, 466.

3

Matthews was acquitted on seven.  JA 132-135.  The jury found Matthew guilty of a single felon in possession charge involving weapons and ammunition recovered from Louis Clifton's apartment in Woodberry Village on January 12, 2013.[4] JA 134.

*Matthews' Sentence*

On June 3, 2015, the Probation Office prepared a presentence report.  It applied base offense level 14 because Matthews, was a prohibited person having been convicted in the DC Superior Court in 2010 for attempted assault with a dangerous weapon ("ADW"). JA 510-511 at ¶ 43.   The report noted that this prior conviction may qualify as a crime of violence which would increase the base offense level.  JA 511 n. 2.

Upon receipt and review of the transcript of Matthews' 2010 Superior Court plea colloquy, the Probation Office revised the presentence report by increasing the base offense level to 22 pursuant to §2K2.1(a)(3).  See JA 523 at ¶ 43, 535.  That section provides that base offense level 22 applies if, among other things, the "defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense."

---

[4]  As alleged in Count 9 of the retyped indictment, those items included a Master Piece Arms 9-millimeter semi-automatic pistol, a Lorcin .380 caliber semi-automatic pistol, a Smith & Wesson .38 Special caliber Revolver, .9-millimeter ammunition, .380 caliber ammunition and .38 Special caliber ammunition.   JA 126.

Defendant objected to the revised offense level.  The prosecutor, however, maintained that the revision was correct because "[h]e shot a gun at somebody." JA 468.  The defense did not dispute that the prior offense involved the discharge of a firearm but argued that "[i]t doesn't matter because what's at issue …is not the conduct" it is "the elements of the offense."[5]  JA 471.  The District Court adopted the PSR report's base offense level 22.  JA 483.

The court calculated defendant's guideline range at 78 to 97 months and imposed a 108 month sentence.  JA 483-484, 489.  The Court's reasons for varying upward were stated generally as needing to deter defendant and others from similar conduct, protect the community and promote respect for the law.  JA 488-489.

## Summary of Arguments

1)  The sentencing court increased Matthews' base offense level upon erroneously concluding that his prior conviction for attempted assault with a dangerous weapon was a "crime of violence." A crime of violence as defined by U.S.S.G. §4B1.2, must fall within one of three clauses that are known as the "force clause," the "enumerated offense clause" and the "residual clause."  Attempted assault with a dangerous weapon is not a crime of violence under the "force

---

[5]   The conduct that gave rise to defendant pleading guilty to an attempted intent-to-frighten assault was that "Mr. Matthews had a hostile exchange with his baby's mother… that involved a gun. But that at the time the gun was discharged, she was already in the building."   JA 471-472.

clause" because that offense may be committed without the actual or threatened use of violent physical force. It is not one of the enumerated offenses nor is it a crime of violence under the "residual clause" because that clause is invalid in light of *Johnson v. United States,* __ U.S. __; 135 S.Ct. 2551 (2015).

2) The sentencing court plainly erred in failing to justify its above guideline variance. In addition to the increased base offense level for having been previously convicted of a "crime of violence" Matthews' calculated guideline range of 78-97 months included enhancements for possessing multiple weapons and for involvement in drug distribution. When the court varied upward to 108 months, it did not explain why it considered Matthews' conduct more harmful or egregious than the typical felon in possession case accounted for by those enhancements.

Argument

**I. Sentencing Court Erred In
Increasing Matthew's Base Offense Level
For a Prior "Crime of Violence"**

A.    *Standard of Review*

Whether a prior conviction qualifies as a crime of violence is reviewed *de novo*. *United States v. Sheffield*, 832 F.3d 296, 311 (D.C. Cir. 2016); *In re Sealed Case*, 548 F.3d 1085, 1090 (D.C. Cir. 2008).

6

B.      *"Crime of Violence"*

The sentencing guideline applicable to Matthews' conviction for violating 18

U.S.C. §922(g) increases the base offense level if, among other things, the

defendant has committed a prior "crime of violence," as defined in

Guideline § 4B1.2(a). U.S.S.G. § 2K2.1 cmt. n. 1 (defining "crime of violence"

through cross-reference to § 4B1.2(a)). A "crime of violence" is any offense under

federal or state law, punishable by imprisonment for a term exceeding one year,

that—

> (1) has as an element the use, attempted use, or threatened use of
> physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of
> explosives, or otherwise involves conduct that presents a serious
> potential risk of physical injury to another.

U.S.S.G. § 4B1.2(a)(2014).  Subsection (1) is referred to as the force clause or

elements clause.  *United States v. Redrick*, 841 F.3d 478, 480 (D.C. Cir. 2016).

Subsection (2) explicitly includes crimes that do not contain an element of actual

or threatened violent force but involve a risk of injury to another.  The first portion

of subsection (2) is referred to as the "enumerated offense clause" and the

"otherwise involves" portion is referred to as the "residual clause." *Id.*

7

Neither the Presentence Report nor the statements made by the sentencing court make clear whether defendant's prior attempted ADW conviction fell within the force clause or the residual clause.[6]  For the following reasons neither apply.

1.    *The Force Clause Standards*

The force clause requires a conviction to be based on a crime that "has as an element the use, attempted use, or threatened use of physical force against the person of another." U.S.S.G. § 4B1.2(a)(1).  Courts may look only to the elements of the offense and not to the underlying facts as to how an individual offender might have committed it on a particular occasion. *United States v. Sheffield*, 832 F.3d at 314 (citing *Begay v. United States*, 553 U.S. 137, 141 (2008)); see also *United States v. Andrews,* 479 F.3d 894, 897 (DC Cir. 2007).

"Elements are the constituent parts of a crime's legal definition—the things the prosecution must prove to sustain a conviction."  *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016).  Even when there is "little doubt" that the circumstances of a defendant's offense were violent, "the question is whether [the statute violated], as a categorical matter," is a crime of violence.  *Sykes v. United States,* 564 U.S. 1, 7 (2011) *overruled on other grounds by Johnson v. United States,* 135 S.Ct. at 2551.

---

[6]  Clearly it is not one of the enumerated offenses.

8

Additionally, this Court has long recognized that physical force is the touchstone of the first prong of the Guidelines' definition of "crime of violence." *U.S. v. Andrews*, 479 F.3d at 897. More recently, the Supreme Court clarified that the type of physical force required is "*violent* force." *Johnson v. United States,* 559 U.S. 133, 140 (2010)(emphasis added). The common law standard for force that may be satisfied by offensive touching is not sufficient to constitute physical force under federal law.[7] *Id.* at 139–40.

### a. *Elements of Attempted ADW*

Matthews was previously convicted in the Superior Court of the District of Columbia of attempted ADW.[8] JA 525. The District of Columbia's general attempt statute does not define the elements of the offense. See, D.C. Code § 22-1803. The Court of Appeals has long held that to prove an attempt to commit an offense, the government is required to prove that the defendant intended to commit a particular crime, did some act towards its commission, but failed to consummate

---

[7] While this meaning of "physical force" is a question of federal law, a federal court is bound by the state court's interpretation of the elements of the state offense at issue. *Johnson v. U.S.,* 559 U.S. at 138. Accordingly, if a state's highest court has determined that the force element of the offense is satisfied by a mere uninvited touch, a conviction under that law cannot constitute a crime of violence under the force clause. *Id*. at 140.

[8] The statutory maximum sentence for attempted ADW is "not more than 5 years" which is half the ten year maximum for ADW. *Compare* D.C. Code § 22-1803 *with* D.C. Code § 22–402. Matthews was sentenced to 15 months incarceration. JA 525 at ¶ 54.

the crime.  *Frye v. United States*, 926 A.2d 1085, 1099 (D.C. 2005).  Failure to

consummate the crime, however, is not one of the essential elements of an attempt.

*United States v. Fleming,* 215 A.2d 839, 840 (D.C.1966).  Accordingly, in order to

find one guilty of an attempt offense, the government need only prove two things:

(1) specific intent to commit a particular crime; and (2) an act reasonably adapted

to accomplishing that crime.  Criminal Jury Instructions for the District of

Columbia, No. 7.101 (5th Ed. 2015).  Neither element requires the actual or

threatened use of force.[9]

### b.  *Attempted ADW Does Not Have as an Element the Use, Attempted Use or Threatened Use of Force*

The particular crime that defendant was convicted of specifically intending

to commit was ADW.  That offense has been interpreted by the District of

Columbia Court of Appeals to consists of common law simple assault plus the fact

that the assault is committed with a dangerous weapon.  *Perry v. United States*, 36

A.3d 799, 811 (D.C. 2011).   Generally, the crime of simple assault is committed

---

[9]    Application note 1 to §4B1.2 lists additional crimes, including the inchoate crime of attempt, as included in the guideline's definition of "crime of violence." That note, however, "is enforceable only as an interpretation of the residual clause in § 4B1.2(a)(2); it has no independent legal force." *United States v. Rollins*, 836 F.3d 737, 743 (7th Cir. 2016).

either by attempting to injure or by intending to frighten another person.[10]

Criminal Jury Instructions, No 4.101.  It has long been recognized that,

> "violence" in its ordinary meaning is not a necessary element of assault, for an attempt to do unlawfully to another any bodily injury however small constitutes an assault ….

*Watson v. United States*, 979 A.2d 1254, 1257 (D.C. 2009)(internal quotations and citations omitted).

The added requirement that the assault be committed with a dangerous weapon does not bring ADW within the definition of a crime of violence.  A dangerous weapon is defined broadly to include non-violent, common-place objects as well as inherently dangerous ones.[11]  *Perry v. United States*, 36 A.3d at 812 (internal quotation and citation omitted). Inherently dangerous weapons, such as a firearm, however, need not be used in a manner for which it was designed.[12] For example, a firearm need not be discharged, pointed, brandished or otherwise employed for its destructive capability. Nor does the victim need to be aware of the

---

[10]   The District of Columbia has also recognized non-violent sexual touching as a distinct type of simple assault.  *Mungo v. United States*, 772 A.2d 240, 245 (D.C. 2001).

[11] A "dangerous weapon" is any object that is "designed to be used, actually used, or threatened to be used in a manner likely to produce death or serious bodily injury."  Criminal Jury Instructions, No 4.101.

[12]   On the other hand, for objects that have a non-violent, commonplace use, the government must prove that the actor actually used the object in a dangerous manner.  *Id.*

presence of the weapon.[13]  See, e.g. *Parks v. United States*, 627 A.2d 1, 6 (D.C. 1993).  In *Parks* a conviction for assault on a police officer with a dangerous weapon was upheld where the police officer standing outside the defendant's car door was unaware that defendant reached down under the front car seat and raised a gun to his knee.  *Id.*

For this reason, the dangerous weapon component of ADW is distinguishable from the dangerous weapon component of the Maryland armed robbery offense recently addressed by this Court.  *U.S. v. Redrick,* 841 F.3d at 478. *Redrick* held that the Maryland's armed robbery offense was a "violent felony" under the nearly identical force clause of the Armed Career Criminal Act (ACCA). The court reasoned that the,

> additional element of "use" of a dangerous or deadly weapon supplies at minimum a "threat" of physical force against the person of another. And because the means employed is a "dangerous or deadly weapon," the required degree of force--that is, "*violent* force" is present."

*Id.* at 484.    *Redrick* distinguished a Ninth Circuit case that reached the opposite conclusion with respect to the Massachusetts armed robbery offense.[14]  It noted that the Massachusetts offense "does not require 'use' of the dangerous or deadly

---

[13] "[I]t is not necessary that the victim experience apprehension." *Smith v. United States*, 593 A.2d 205, 206 (D.C. 1991); *Williamson v. United States,* 445 A.2d 975, 978 (D.C. 1982)("criminal assault in the District of Columbia encompasses such conduct as *could* induce in the victim a well-founded apprehension of peril.")

[14]  *United States v. Parnell*, 818 F.3d 974, 980 (9th Cir. 2016).

weapon: the victim does not even need to be aware of the presence of the weapon." *Id.*

Under the Massachusetts offense it is enough that a dangerous weapon is *possessed* during the robbery. The *Parnell* court explained that,

> [t]he mere fact an individual is armed, however, does not mean he or she has used the weapon, or threatened to use it, in any way.

*U.S. v. Parnell*, 818 F.3d at 980. The court reasoned that "[t]here is a material difference between the presence of a weapon, which produces a *risk* of violent force, and the actual or threatened use of such force." It concluded that "[o]nly the latter falls within ACCA's force clause" and offenses presenting only a risk of violence fall within the residual clause. *Id.*

Like *Parnell* and unlike *Redrick,* the weapon element of ADW encompasses conduct that produces only a *risk* of violent force because of the presence of an inherently dangerous weapon. After all, the reason ADW warrants a higher penalty than simple assault is that there exists an increased *risk* of violence. *Perry v. United States*, 36 A.3d at 812.

Even for those commonplace items that must actually be used in a dangerous manner in order to be considered a dangerous weapon, it is well established that every element of the completed crime does not have to be proved when the defendant is charged only with an attempt to commit that crime. *Smith v. United States*, 813 A.2d 216, 219 (D.C. 2002). Therefore, the act necessary to commit the

13

attempt offense need not actually entail the attempted or threatened "use" of a dangerous weapon that the *Redrick* court found significant. Generally, the act is sufficient when it makes reasonably clear that had the defendant not been interrupted or made a mistake he would have completed the crime. *Frye v. U.S.*, 926 A.2d at 1096.

      2.     *Attempted ADW is Not a Crime of Violence under the Residual Clause.*

At the time of defendant's sentencing, the Supreme Court had recently struck down, as unconstitutionally vague, the residual clause of ACCA that, like the guideline's residual clause, deems "violent" any felony that "otherwise involves conduct that presents a serious risk of physical injury to another." *Johnson v. United States*, 135 S.Ct. at 2563. After J*ohnson*, a crime is a "violent felony" under ACCA only if it meets the requirements of the force clause or the enumerated offense clause.

*Johnson* did not address the guidelines residual clause under §4B1.2(a)(2). However, this Court, consistent with its prior decisions and the government's concession, recently extended *Johnson's* rationale to that guideline. *United States v. Sheffield*, 832 F.3d at 313. Additionally, the Third, Sixth and Tenth Circuits have declared § 4B1.2's residual clause unconstitutionally vague in light of *Johnson*. *United States v. Madrid*, 805 F.3d 1204, 1210 (10th Cir. 2015); *United States v. Pawlak*, 822 F.3d 902, 911 (6th Cir. 2016); *United States v. Calabretta*,

831 F.3d 128, 133-134 (3d Cir. 2016).[15]    Accordingly, a crime is a "crime of violence" under § 4B1.2(a) only if it 1) falls within the force clause, which for the reasons previously stated attempted ADW does not or 2) "is burglary of a dwelling, arson, or extortion, [or is an offense that] involves use of explosives" which it clearly is not.

In sum, Matthews' prior attempted ADW conviction is not a crime of violence within the meaning of §4B1.2.  The District Court and Probation Office erred by considering the underlying facts of the offense rather than its elements to conclude otherwise.  As a result defendant's applicable guideline range was miscalculated and remand for resentencing is warranted.

## II.    Sentencing Court Plainly Erred In Failing To Sufficiently Explain Reasons for Sentencing Matthews Above the Guideline Range

### A. Standard of Review

Review of procedural soundness of a district court's sentencing decision is for abuse of discretion.  *Gall v. United States,* 552 U.S. 38, 51(2007).  Where, as here, the defendant did not object to the adequacy of the court's reasons for its above guideline sentence, review for procedural error is pursuant to the four-part plain error test. See *United States v. Akhigbe*, 642 F.3d 1070, 1085–86 (DC Cir.

---

[15]   Issues of whether a residual clause in the career offender sentencing guideline is unconstitutionally vague and retroactive on collateral review are pending before the Supreme Court.  *Beckles v. United States*, 136 S.Ct. 2510 (*cert. granted* June 27, 2016)(No. 15-8544)(argued November 28, 2016).

2011).  This test is satisfied if "(1) there is in fact an error to correct; (2) the error is plain; (3) it affects substantial rights; and (4) it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.*

### B.  Relevant Background

The District Court applied a 2 level increase to Matthews' base offense level because the offense involved 3 to 7 weapons.  JA 483-484.  It applied an additional 4 level increase for possessing weapons in relation to another felony.  *Id.* Acceptance of responsibility decreased Matthews' offense level by two for a total offense level 26.  *Id.*   At criminal history category III, the resulting guideline range was 78 to 97 months.   *Id.*   Rejecting the government's request for a variance to 120 months and the defendant's request for a 78 month bottom of the guideline range, the court imposed an above guideline sentence of 108 months incarceration.[16]  JA 487, 489.

### C.    Sentencing Court Did Not Explain Why Defendant's Conduct was More Harmful or Egregious Than The Typical Case

Before imposing a term of incarceration that is outside the Guidelines range the sentencing court "must consider the extent of the deviation and ensure that the

---

[16]  In 2014, the average sentence length was 59 months for offenders, like Matthews, who were convicted of violating only § 922(g) and were not sentenced under ACCA.  U.S. Sent'g Comm'n, Quick Facts – Felon in Possession of a Firearm. http://www.ussc.gov/sites/default/files/pdf/research-and-publications/quick-facts/Quick_Facts_Felon_in_Possession_FY14.pdf  Accessed June 27, 2016.

justification is sufficiently compelling to support the degree of the variance." *Gall v. U.S.*, 552 U.S. at 50.   In addition, the court must state in open court "the specific reason for the imposition of a sentence different from that described" by the applicable guideline range.  18 U.S.C. §3553(c).  Section 3553(c) also requires those reasons to "be stated with specificity" in a written statement of reasons.  *Id.* Applying these standards, this Court ruled that when the prison term imposed is above the properly calculated advisory Guidelines range, the District judge must "state the specific reason why the defendant's conduct was more harmful or egregious than the typical case represented by the guideline range." *United States v. Brown*, 808 F.3d 865, 866-867 (D.C. Cir. 2015)(internal quotation and citation omitted).

This court has previously found that a district court commits plain error when it imposes an above-Guidelines sentence without giving "individualized reasoning as to why [it] believed a sentence 12 months above the Guidelines range was appropriate for this particular defendant."  *U.S. v. Akhigbe,* 642 F.3d at 1086. The court reasoned that when observations about an offense "apply equally to any defendant convicted of th[at] offense," those observations "provide no individualized reasoning as to why ... a sentence ... above the Guidelines range [is] appropriate for th[e] particular defendant." *Id.*

17

As in *Akhigbe,* the district court sentenced Matthews twelve months above what it determined was the top of his guideline range for reasons that apply equally to any defendant convicted of that offense. The only individualized observations the court made of defendant were that,

> [y]ou're engaged here in a drug operation, and you were involved with, of course, others, Mr. Brown in particular, involved in drug dealing. And you had a lot of weapons on you. You were involved with a lot of weapons. And there certainly was enough evidence for me to see that you were involved in some related acts of violence involved here.

Tr. 9/9/15 27-28.

The judge, however, never articulated a "specific reason" why he found this "conduct ... more harmful or egregious than the typical" felon in possession case that is accounted for by the applicable Guidelines range. With respect to the defendant's involvement "in drug dealing," the court imposed a four level enhancement to his base offense level for committing the offense in relation to another felony offense pursuant to USSG § 2K2.1(a)(6)(B). JA 484, 523 at ¶ 45. The sentencing court did not explain how or why defendant's involvement in drug dealing was any more harmful or egregious than the typical case accounted for by this four level enhancement. There was an even greater need for an explanation in this case since Matthews was acquitted of all drug offenses, including conspiracy.

Similarly, the applicable guideline range takes into account the court's observation that defendant "was involved with a lot of weapons." Pursuant to §

18

2K2.1(b)(1)(A) the court imposed, over defense objection, a two level

enhancement for possessing 3-7 firearms.  JA 483-484.  In doing so the court

rejected the government's position that defendant should be held accountable for

possessing more than 7 firearms.    Again, the court failed to explain how or why

defendant's possession of "a lot of weapons" was more harmful or egregious than

the typical felon in possession case involving 3 to 7 firearms.

     With respect to "related acts of violence," the court did not specify what acts

it believed defendant was involved.  Defendant was acquitted either by the court or

the jury of all charged acts of violence.  See *supra* note 3.

     The court did state that,

> we can't have people out selling drugs and running around with
> weapons, [] especially weapons that can go off … and hurt folks
> whether they be little kids in an apartment or whether they be police
> officers trying to do their job across the street.

*Id.*  But, it is undisputed that no individual was hurt in this case.  And, the court

did not explain whether or why Matthews' conduct presented a potential risk to

others that was more harmful or egregious than a typical felon in possession of

weapons "that can go off ... and hurt folks."

     In general the court explained that an above guideline sentence was

necessary "to deter you and others, protect the community, promote respect for the

law, and, of course, give you a fair and adequate punishment under the

circumstances."  JA 489.   The court never explained how any of those factors

19

applied to Matthews.  This court has previously held that the mere recitation of 18

U.S.C. § 3553(a) factors "without application to the defendant being sentenced

does not demonstrate reasoned decision making or provide an adequate basis for

appellate review."  *U.S. v. Akhigbe*, 642 F.3d at 1086.  Accordingly, the court

failed to sufficiently explain orally, its reasons for an above guideline sentence.

     The District Court's written explanation is even less informative.  It did no

more than check the boxes of three § 3553 factors.  JA 569-570.  The court neither

incorporated the transcript of its oral ruling nor explained with specificity why

defendant's conduct, assessed in light of the three factors it checked, was more

harmful or egregious than that addressed by the properly calculated Guidelines

range.  See *U.S. v. Brown*, 808 F.3d at 874.

### D.   Lack of Adequate Explanation Requires Reversal for Plain Error

     This court has repeatedly vacated sentences under plain error review where

the sentencing judge failed to provide a statement of reasons as required by

§3553(c).  *In re Sealed Case*, 527 F.3d 188, 193 (D.C. Cir. 2008); *U.S. v. Brown,*

808 F.3d at 874; *U.S. v. Akhigbe,* 642 F.3d at 1070.  It has explained that,

> [t]he error itself is obvious enough. And the required showing of
> prejudice should be slightly less exacting for sentencing than it is in
> the context of trial errors. The absence of a statement of reasons is
> prejudicial in itself because it precludes appellate review of the
> substantive reasonableness of the sentence thus seriously affecting the
> fairness, integrity, or public reputation of judicial proceedings. A
> district judge must adequately explain the chosen sentence to promote

20

> the perception of fair sentencing. It is important not only for the
> defendant but also for the public to learn why the defendant received a
> particular sentence.  Arbitrary decision making undermines
> understanding of, trust in, and respect for the court and its
> proceedings. We assume Appellant's sentence of eighteen months was
> not randomly selected, but the absence of any explanation makes it
> seem so. Thus, a failure to comply with § 3553(c) causes grave
> institutional harm, as well as simultaneously depriving the defendant
> of the benefit of our review. This failure is therefore plain error.

*In re Sealed Case*, 527 F.3d at 193(internal quotations and citations omitted.)

In sum, the District Court's in-court comments provided no justification for why it believed Matthews' applicable guideline range does not fully account for his criminal conduct.  And the written statement of explanation was even less expansive.  Accordingly, both the oral and written explanations are clearly insufficient and independently amount to plain error.

## CONCLUSION

For the foregoing reasons, defendant Matthews respectfully requests that the court vacate his sentence and remand for resentencing.

Respectfully submitted,

___/s/_____
Jonathan Zucker, #384629
37 Florida Avenue, NE
Suite 200
Washington, DC  20002
(202) 624-0784
jonathanzuckerlaw@gmail.com
Counsel for Keith Matthews
(Appointed by the Court)

21

## WORD COUNT AND FONT CERTIFICATION

I certify that this brief is prepared in Times New Roman 14 point font and contains 4983 words.

_____/s/_____
Jonathan Zucker

## CERTIFICATE OF SERVICE

I certify that on January 13, 2017, I caused the foregoing opening brief of

Appellant Keith Matthews to be filed electronically with the Clerk of the Court

using the appellate CM/ECF system.   Counsel for the United States, Assistant

United States Attorney James Ewing, who is a registered CM/ECF user at

james.ewing@usdoj.gov will be served by the appellate CM/ECF system.

_____/s/_____
Jonathan Zucker

# ADDENDUM

# ADDENDUM

## D.C. Code § 22-402
## Assault with intent to commit mayhem or with dangerous weapon.

Every person convicted of an assault with intent to commit mayhem, or of an assault with a dangerous weapon, shall be sentenced to imprisonment for not more than 10 years. In addition to any other penalty provided under this section, a person may be fined an amount not more than the amount set forth in § 22-3571.01.

## D.C. Code § 22-1803
## Attempts to commit crime

Whoever shall attempt to commit any crime, which attempt is not otherwise made punishable by chapter 19 of An Act to establish a code of law for the District of Columbia, approved March 3, 1901 (31 Stat. 1321), shall be punished by a fine not more than the amount set forth in § 22-3571.01 or by imprisonment for not more than 180 days, or both. Except, whoever shall attempt to commit a crime of violence as defined in § 23-1331 shall be punished by a fine not more than the amount set forth in § 22-3571.01 or by imprisonment for not more than 5 years, or both.

## U.S.S.G. § 2K2.1.
## <u>Unlawful Receipt, Possession, or Transportation of Firearms or Ammunition; Prohibited Transactions Involving Firearms or Ammunition</u>

(a)     Base Offense Level (Apply the Greatest):
(1)     **26**, if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense;
(2)     **24**, if the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense;
(3)     **22**, if (A) the offense involved a (i) semiautomatic firearm that is capable of accepting a large capacity magazine; or (ii) firearm that is described in 26 U.S.C. § 5845(a); and (B) the defendant committed any part of the instant

offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense;

(4)    **20**, if --

(A)    the defendant committed any part of the instant offense subsequent to sustaining one felony conviction of either a crime of violence or a controlled substance offense; or

(B)    the (i) offense involved a (I) semiautomatic firearm that is capable of accepting a large capacity magazine; or (II) firearm that is described in 26 U.S.C. § 5845(a); and (ii) defendant (I) was a prohibited person at the time the defendant committed the instant offense; (II) is convicted under 18 U.S.C. § 922(d); or (III) is convicted under 18 U.S.C. § 922(a)(6) or § 924(a)(1)(A) and committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person;

(5)    **18**, if the offense involved a firearm described in 26 U.S.C. § 5845(a);

(6)    **14**, if the defendant (A) was a prohibited person at the time the defendant committed the instant offense; (B) is convicted under 18 U.S.C. § 922(d); or (C) is convicted under 18 U.S.C. § 922(a)(6) or § 924(a)(1)(A) and committed the offense with knowledge, intent, or reason to believe that the offense would result in the transfer of a firearm or ammunition to a prohibited person;

(7)    **12**, except as provided below; or

(8)    **6**, if the defendant is convicted under 18 U.S.C. § 922(c), (e), (f), (m), (s), (t), or (x)(1).

(b)    Specific Offense Characteristics

(1)    If the offense involved three or more firearms, increase as follows:

| Number of Firearms | Increase in Level |
| --- | --- |
| (A)    3-7 | add 2 |
| (B)    8-24 | add 4 |
| (C)    25-99 | add 6 |
| (D)    100-199 | add 8 |
| (E)    200 or more | add 10 |

(2)    If the defendant, other than a defendant subject to subsection (a)(1), (a)(2), (a)(3), (a)(4), or (a)(5), possessed all ammunition and firearms solely for lawful sporting purposes or collection, and did not unlawfully discharge or otherwise unlawfully use such firearms or ammunition, decrease the offense level determined above to level **6**.

(3)    If the offense involved—

      (A)     a destructive device that is a portable rocket, a missile, or a device for use in launching a portable rocket or a missile, increase by **15** levels; or

      (B)     a destructive device other than a destructive device referred to in subdivision (A), increase by **2**levels.

(4)     If any firearm (A) was stolen, increase by **2** levels; or (B) had an altered or obliterated serial number, increase by **4** levels.

The cumulative offense level determined from the application of subsections (b)(1) through (b)(4) may not exceed level **29**, except if subsection (b)(3)(A) applies.

(5)     If the defendant engaged in the trafficking of firearms, increase by **4** levels.

(6)     If the defendant—

      (A)     possessed any firearm or ammunition while leaving or attempting to leave the United States, or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be transported out of the United States; or

      (B)     used or possessed any firearm or ammunition in connection with another felony offense; or possessed or transferred any firearm or ammunition with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense,

increase by **4** levels.  If the resulting offense level is less than level **18**, increase to level **18**.

(7)     If a recordkeeping offense reflected an effort to conceal a substantive offense involving firearms or ammunition, increase to the offense level for the substantive offense.

(c)     Cross Reference

(1)     If the defendant used or possessed any firearm or ammunition in connection with the commission or attempted commission of another offense, or possessed or transferred a firearm or ammunition with knowledge or intent that it would be used or possessed in connection with another offense, apply --

      (A)     §2X1.1 (Attempt, Solicitation, or Conspiracy) in respect to that other offense, if the resulting offense level is greater than that determined above; or

      (B)     if death resulted, the most analogous offense guideline from Chapter Two, Part A, Subpart 1 (Homicide), if the resulting offense level is greater than that determined above.

*Commentary*

*Statutory Provisions*:  18 U.S.C. §§ 922(a)-(p), (r)-(w), (x)(1), 924(a), (b), (e)-(i), (k)-(o), 2332g; 26 U.S.C. § 5861(a)-(l). For additional statutory provisions, *see* Appendix A (Statutory Index).

*Application Notes:*
*1.     Definitions.— For purposes of this guideline:*
*"Ammunition" has the meaning given that term in 18 U.S.C. § 921(a)(17)(A).*
*"Controlled substance offense" has the meaning given that term in §4B1.2(b) and Application Note 1 of the Commentary to §4B1.2 (Definitions of Terms Used in Section 4B1.1).*
*"Crime of violence" has the meaning given that term in §4B1.2(a) and Application Note 1 of the Commentary to §4B1.2.*
*"Destructive device" has the meaning given that term in 26 U.S.C. § 5845(f).*
*"Felony conviction" means a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed. A conviction for an offense committed at age eighteen years or older is an adult conviction. A conviction for an offense committed prior to age eighteen years is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted (e.g., a federal conviction for an offense committed prior to the defendant's eighteenth birthday is an adult conviction if the defendant was expressly proceeded against as an adult).*
*"Firearm" has the meaning given that term in 18 U.S.C. § 921(a)(3).*
. . .


## D.C PATTERN JURY INSTRUCTIONS

### Instruction 4.101 ASSAULT WITH A DANGEROUS WEAPON
*D.C. Official Code § 22-402 (2001)*

A.-- <u>ATTEMPTED BATTERY ASSAULT</u>

The elements of assault with a dangerous weapon, each of which the government must prove beyond a reasonable doubt, are that:

1.     [<u>Name of defendant</u>], with force or violence, injured [or attempted or tried to injure] [<u>name of complainant</u>] [another person];

2.     S/he did so voluntarily, on purpose, and not by mistake or accident; [and]

[3.      At the time, [name of defendant] had the apparent ability to injure [name of complainant] [a person]; and

4.      [Name of defendant] committed the act with a dangerous weapon.


B.-- <u>INTENT-TO-FRIGHTEN ASSAULT</u>

[The elements of assault with a dangerous weapon, each of which the government must prove beyond a reasonable doubt, are that:]

[Another way the government may prove an assault with a dangerous weapon is by proving each of the following elements beyond a reasonable doubt, that:]

1.      [Name of defendant] committed a threatening act that reasonably would create in another person a fear of immediate injury;

2.      [Name of defendant] acted voluntarily, on purpose, and not by mistake or accident;

3.      At the time, [name of defendant] had the apparent ability to injure [name of complainant] [a person]; and

4.      [Name of defendant] committed the threatening act with a dangerous weapon.


<u>Dangerous Weapon</u>

An object is a dangerous weapon if it designed to be used, actually used, or threatened to be used, in a manner likely to produce death or serious bodily injury. The government need not prove the defendant actually killed, injured or even touched [name of complainant] with the weapon.

[Voluntarily pointing a dangerous weapon at another person in a threatening manner, or voluntarily using it in a way that would reasonably create in the other person a fear of immediate injury, would be an assault with a dangerous weapon.]

Injury

[In the case of either kind of assault,] [I][i]njury means any physical injury, however small[.] [, including a touching offensive to a reasonable person]. [The government must prove a threatening act; mere words are not sufficient. The government need not prove the defendant intended to injure [name of complainant].]

**Instruction 7.101 ATTEMPT**
*D.C. Official Code § 22-1803 (2001)*

**SUPERIOR COURT:**

The elements of the crime of attempted  [ ^ ] [specify crime], each of which the government must prove beyond a reasonable doubt, are that:

1.      [ ^ ] [Name of defendant] intended to commit the crime of  [ ^ ] [specify crime];

2.      [ ^ ] [Name of defendant] did an act reasonably adapted to accomplishing the crime of  [ ^ ] [specify crime].  [ ^ ] [Name of defendant] must have done more than prepare to commit  [ ^ ] [specify crime]. His/her act must have come dangerously close to committing the crime. [You may convict the defendant of an attempt to commit a crime even if the evidence shows the crime was completed.]

 [ ^ ] [Read elements of underlying crime.]